UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 16-24465-CIV-MARTINEZ/GOODMAN

ROY MALTEZ,

    Plaintiff,

v.

TREPEL AIRPORT EQUIPMENT
GMBH,

    Defendant.
_____/

## ORDER ON DEFENDANT'S *DAUBERT* MOTION

Defendant Trepel Airport Equipment GMBH moves to exclude under *Daubert* evidence and testimony of Plaintiff Roy Maltez's expert, Linda A. Small. [ECF No. 41]. Maltez filed an opposition response. [ECF No. 44]. Trepel filed a reply. [ECF No. 49]. After the parties consented to the Undersigned issuing final orders on dispositive pre-trial motions, United States District Judge Jose E. Martinez referred all pretrial matters to me. [ECF Nos. 21, p. 2; 26].

For the reasons outlined below, the Undersigned **grants in part** and **denies in part** the *Daubert* motion. The Undersigned prohibits Small, an expert in aspects of the aviation industry, from opining at trial on whether Trepel breached its purchase and sale contract with American Airlines for a Challenger 700 aircraft tractor and from

opining on how that contract should be interpreted. Small, however, is permitted to testify about whether the training Maltez received from a Trepel employee was adequate. Although Small's opinions are hardly free from challenge, Trepel will be able to vigorously pursue those challenges through cross-examination.

I.  **Factual Background**

Maltez, an American Airlines employee, was hurt while training on an aircraft pushback tractor called the Challenger 700, which Trepel manufactures and sold to American. The Challenger 700 weighs about 50 tons and is designed to push and tow the wide-body Boeing 777 aircraft along airport aprons and tarmacs. Maltez claims that Trepel's trainer negligently conducted the training, causing him injury. Maltez also contends that tractor is not intended to transport persons or property.

In 2013, American bought two Challenger 700s from Trepel for use at Miami International Airport. As part of this sale, Trepel agreed to provide "their own factory service engineer" to conduct "full maintenance and operational training free of charge." Trepel further represented that the "services provided shall be performed by [qualified] and efficient employees." The written agreement also provided that Trepel "shall be responsible for the direct supervision" of its employees, including the factory-service engineer. Trepel then provided a syllabus outlining course content for its trainer to follow, which is entitled: "Train the Trainer – Operator Trepel Model Challenger 700."

On December 18, 2013, a Trepel factory-service engineer from Germany named

Sebastian Kraemer was at Miami International Airport to, among other things, conduct the "Train the Trainer" training for Challenger 700 operators. The trainees included Maltez and an American co-employee, Josue M. Perez. Kraemer is a mechanic by trade with no formal education, training, certifications, credentials, degrees, or diplomas pertaining to conducting training on the operation of airport ground-service equipment. Maltez points out that Trepel does not have any written policies, procedures, or manuals directing its trainers on how to conduct this type of training. According to the training syllabus that Trepel produced, the training was to last "4 HR +" and include "safety instructions for operation," "work with the Trepel Operator Manual," "classroom" training, and a "test drive."

On the afternoon of December 18th, Maltez and Perez attended training with Kraemer. Neither Maltez nor Perez had ever operated the Challenger 700 or even sat inside one before. Maltez and Perez testified that, contrary to the training syllabus, they were not given classroom training. Moreover, both testified that Kraemer did not review the Operator's Manual with them or provide a "handout." They say that, instead, Kraemer led them out to the airport apron, provided a brief overview of the Challenger 700's features while sitting inside the tractor's cab, and then had Perez drive the Challenger 700 from the apron to the tarmac.

During that drive, Kraemer did not fasten his lap belt or insist or ensure that Maltez and Perez wore lap belts or demonstrate where the lap belts were located. The

Challenger 700 does not have stickers or warning lights regarding lap belt usage. And one piece of the Challenger 700's lap belts is capable of being "tucked" out of sight.

Approximately 5 to 10 minutes into the test drive, Kraemer instructed Perez to bring the Challenger 700 to a complete stop near the maintenance hangar. Kraemer then pressed a button on the dashboard. The button disengaged the Challenger 700's front end suspension, a fact unknown to Maltez or Perez. Next, Kraemer instructed Perez to drive over a depressed storm drain -- an uneven surface on the tarmac -- to perform what he termed an "unbalanced maneuver." Because the front-end suspension was deactivated, the Challenger 700 bounced violently as it drove over the drain.

According to Maltez, Kraemer knew that the Challenger 700 could bounce violently if driven over an uneven surface with the front-end suspension disengaged. Nevertheless, Kraemer did not warn his trainees nor insist that they fasten their lap belts before performing the "unbalanced maneuver." As the Challenger 700 bounced, Maltez was thrown out of his seat and hit the cab's roof, suffering injuries to his neck and aggravating a pre-existing back injury.

### Linda Small's Expert Opinion

Small has worked in the airline industry for more than 30 years. Since 2009, she has worked for Delta Global Services as a Safety and Compliance Auditor for all ground-handling activities, including "Train the Trainer" training for the operation of pushback tractors. She currently serves or has served in that capacity for several

4

airlines, including American Airlines. In addition, Small has worked as a "Hub General Manager" at John F. Kennedy International Airport, was "Station Manager" for Delta Air Lines in New Orleans and Gainesville, Florida; was "Assistant Station Manager" in Las Vegas and Seattle; and was the Vice President and part owner of Airways of New Mexico. In addition to domestic airports, Small has also managed an airport station in Panama City, Panama.

In her current employment, Small supervises and oversees "Train the Trainer" training sessions involving ground-service equipment, including aircraft pushback tractors. In addition, she regularly conducts safety audits of these training sessions, and is authorized to correct and, when necessary, call for a "Safety Stop" when she observes unsafe training practices. Maltez contends that Small is intimately familiar with the qualifications that trainers must have, the trainer's responsibilities to trainees during a training session, training procedures and protocol, and industry safety standards and regulatory compliance for training sessions.

For its part, Trepel focuses on other aspects of Small's background -- aspects relating to other aspects of the aviation industry. For example, according to Small's CV, she is a "[s]enior executive and field operations manager with extensive experience in all aspects of airport **customer service**," and is a "specialist in assessing **call center sales and productivity issues** to provide high performing teams with **revenue conversion skill sets**." [ECF No. 41-3, p. 8 (emphasis added)]. Before she was employed by GPE

Aviation Consulting Group, Small was affiliated with Delta Airlines. She has never worked for American Airlines or Trepel. She has never operated a Trepel Challenger 700, and her updated CV does not expressly state that she conducts or supervises "Train the Trainer" training sessions for any type of aircraft tractor or tug.

Small inspected American's Challenger 700 (although Trepel says that it was not advised of her inspection at the time and has not been provided with any records concerning the inspection). Small also met with Maltez on April 11, 2017. Her opinions are in addition based on her review of the deposition transcripts (and exhibits) of Kraemer, Trepel's Rule 30(b)(6) corporate representative, Maltez, and Perez. She also reviewed American's contract with Trepel, the parties' written discovery responses, and Trepel-produced documents (including an incident report, training syllabus, the Challenger 700's Operator's Manual, and Trepel's video demonstration of the "unbalanced maneuver").

Small's "interim report" indicates that Trepel breached a contract provision by not providing a "qualified" trainer. Trepel notes that she provided this opinion even though the contract does not contain the term "trainer" or set forth qualification requirements.

At trial, Small is expected to offer non-scientific, experience-based opinions and testimony applying the facts of this case to the industry-based safety requirements specific to conducting training on aircraft pushback tractors used on airport tarmacs

and aprons. Small will offer opinions concerning: (1) the specific credentials and qualifications that trainers should have to train others on the use and operation of ground-service equipment, including pushback tractors like the Challenger 700; (2) the industry's safety standards and regulatory requirements for training on the use and operation of aircraft pushback tractors conducted on airport tarmacs and aprons; and (3) whether Kraemer's "Train the Trainer" session complied with those standards.

More specifically, Small's opinion is that Kraemer did not have the necessary education, training, or credentials to properly and safely conduct "Train the Trainer" training and that he conducted the training in a manner that fell well below industry safety standards. According to Small's final summary in her updated expert report, Kraemer did not use appropriate standards in a myriad of ways: he did not hold a training class; he did not provide an information handout; he did not review the operational restraints and safety equipment of the Challenger 700; he did not give the American employees a question and answer session; he began to operate the equipment with a student in the driver seat; he did not review any interior safety restraint system; he waited until after the Challenger was moving to direct the driver to adjust the mirrors; and he generally operated the tractor unsafely.

Trepel contends that Small is not competent to offer her opinions. Moreover, it says that her opinions amount to nothing more than a conclusory statement unsupported by any independent testing. It also argues that her opinions are not

helpful because they concern topics within a layperson's common understanding. And finally, it contends that her opinions are cumulative. This last point, however, is more of an evidence-based objection than a *Daubert* challenge.

## II.     Legal Standard

The admission of expert testimony is governed by Federal Rule of Evidence 702, as explained and refined by the United States Supreme Court in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). Under this framework, district courts are charged with a gatekeeping function "to ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002).

Rule 702 provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Supreme Court has stated that "[t]he inquiry envisioned by Rule 702 is . . . a flexible one." *Daubert*, 509 U.S. at 594. "Many factors will bear on the inquiry," and no "definitive checklist or test" exists. *Id.* at 593.

To fulfill its obligation under *Daubert*, a trial court engages in a three-part inquiry

8

and considers the following:

> whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291-1292 (11th Cir. 2005) (internal quotations omitted).

Although there is inevitably some overlap among these three basic factors of qualifications, reliability, and helpfulness, they are distinct concepts and should not be merged together. *See generally United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).

The second area of inquiry referenced above requires "an exacting analysis of the proffered expert's methodology." *McCorvey*, 298 F.3d at 1257. That analysis takes into consideration a number of factors, including: (1) whether the expert's methodology can be, and has been, tested; (2) whether the expert's scientific technique has been subjected to peer review and publication; (3) whether the method employed has a known rate of error; and (4) whether the technique is generally accepted in the scientific community. *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK, Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003); *Rink*, 400 F.3d at 1292. These factors, however, are non-exhaustive. *Kumho Tire*, 526 U.S. at 150; *Rink*, 400 F.3d at 1292. Thus, "[i]n evaluating the reliability of an expert's method . . . a district court may properly consider whether the expert's methodology has been

contrived to reach a particular result." *Rink*, 400 F.3d at 1293 n.7 (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997)).

The burden of establishing the reliability of an expert's opinions rests on the proponent of that expert's testimony. *Frazier*, 387 F.3d at 1260. As part of its gatekeeper role, the district court has "broad discretion in determining whether to admit or exclude expert testimony, and its decision will be disturbed on appeal only if it is manifestly erroneous." *Evans v. Mathis Funeral Home*, 996 F.2d 266, 268 (11th Cir. 1993).

> To warrant or permit the use of expert testimony, two conditions must be met: first, the subject matter must be closely related to a particular profession, business or science and not within the common knowledge of the average layman; second, the witness must have such skill, experience or knowledge in that particular field as to make it appear that his opinion would rest on substantial foundation and would tend to aid the trier of fact in his search for truth.

*Faircloth v. Lamb-Grays Harbor Co.*, 467 F.2d 685, 694 (5th Cir. 1972) (internal quotation omitted).

## III. Analysis

One may correctly say that the majority of Small's experience in the aviation industry appears to be in "call center operations including productivity, training and software programs implementation." Indeed, in the "skills summary" section of her CV, Small describes herself as "[a] specialist in assessing call center sales and productivity issues to provide high performing teams with revenue conversion skill sets." As such, one may be tempted to conclude that her experience is not directly relevant to the

opinions she has rendered in this case about Kraemer's competence and training and whether his conduct on the day in question met applicable standards. Similarly, one may reason that her self-described specialization does not appear directly relevant to the expertise expected from an expert opining on safety and training for massive aircraft tractors.

Nevertheless, there are other areas in her background that appear more relevant to the opinions she seeks to give in this case. That includes being a "Hub General Manager" at John F. Kennedy International Airport, "Station Manager" for Delta Air Lines in New Orleans and Gainesville, Florida; "Assistant Station Manager" in Las Vegas and Seattle; the Vice President and part owner of Airways of New Mexico; and manager of airport station in Panama City, Panama. Moreover, she currently supervises and oversees "Train the Trainer" training sessions involving ground service equipment, including aircraft pushback tractors, and regularly conducts safety audits of these training sessions.

An expert need only be minimally qualified to provide an expert opinion, and any objections to the level of her expertise typically go to the credibility and **weight** of the expert's opinion, **not its admissibility**. *Bouton v. Ocean Props., Ltd.*, No. 16-CV-80502, 2017 WL 4792488, at *7 (S.D. Fla. Oct. 23, 2017). The test is "whether the subject matter of the witness's proposed testimony is sufficiently within the expert's expertise." *In re Mentor Corp. ObTape Transobturator Sling Prods. Liab. Litig.*, 711 F. Supp. 2d 1348, 1367

(M.D. Ga. 2010) (citing *Maiz* v. *Virani,* 253 F.3d 641, 665 (11th Cir. 2001)).

There is no requirement that Small must have had experience driving this specific Challenger 700 equipment in order to provide an expert opinion on the safety and training issues surrounding this equipment.

Rule 702 requires an expert witness to have "specialized knowledge" regarding the area of testimony. Fed. R. Evid. 702(a). The basis of this specialized knowledge "can be practical experience as well as academic training and credentials." *Am. Tech. Res. v. United States*, 893 F.2d 651, 656 (3d Cir. 1990); *Hammond v. Int'l Harvester Co.*, 691 F.2d 646, 653 (3d Cir. 1982) (same).

Courts have liberally interpreted the specialized knowledge requirement and concluded that the liberal admissibility of expert testimony "extends to the substantive as well as the formal qualification of experts." *See, e.g.*, *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994); *Waldorf v. Shuta*, 142 F.3d 601, 625 (3d Cir. 1998).

Nevertheless, mistakes, defects, omissions, problems, weaknesses and warts with an expert's opinion do not necessarily mean that the court must *exclude* the opinion. To the contrary, many challenges to expert testimony ultimately can be viewed as an attack on the *weight* of the expert's opinions, which can be addressed at trial through vigorous cross-examination, rather than to admissibility. *See generally Holiday Inns, Inc. v. Holiday Out in Am.*, 481 F.2d 445, 447 (5th Cir. 1973) ("format of the questions and the manner of conducting the survey" go to "weight of [the] evidence"); *Pods Enters., Inc. v. U-Haul*

*Int'l, Inc.*, 12-01479, 2014 WL 2625297, at **2–3 (M.D. Fla. June 12, 2014) ("improper universe" and "improper questioning" were "technical deficiencies" that "go to the weight of [the] opinions, not their admissibility"); *Hoff v. Steiner Transocean, Ltd.*, No. 12-22329, 2014 WL 273075, at *4 (S.D. Fla. Jan. 24, 2014) ("As long as a reliable basis exists for the expert's opinion, it is admissible, and it is then up to the parties to vet the opinion before the jury"); *Nightlight Sys., Inc. v. Nitelites Franchise Sys., Inc.*, No. CIV.A.1:04CV2112CAP, 2007 WL 4563873, at **7-8 (N.D. Ga. July 17, 2007) (finding allegedly flawed survey universe and question formats were technical deficiencies of weight, not admissibility).

As explained in Small's final report, she is trained to audit "[p]ushback tractors for all narrow body and wide body" and "passenger boarding bridges, de-icing trucks and miscellaneous ramp transportation vehicles." [ECF No. 44-9, p. 1]. And she is also "charged with identifying the operational risks of unsafe work practices and remediating them through a thorough review of training shortcomings to achieve a compliant and safe operation." *Id.*

The Undersigned agrees with Maltez that Small has adequate experience and knowledge to offer her opinion testimony at trial. Trepel, of course, may well be able to impeach her conclusions by highlighting some of the defense-oriented points outlined above. But that is insufficient to justify an order excluding all of her expert opinions,

even if the potential impeachment goes to the heart of her experience and credentials.[1]

Small's testimony also satisfies the "fit" of *Daubert*. At trial, Small will offer non-scientific, experience-based opinions and testimony applying the facts of this case to the industry based safety requirements specific to conducting training on aircraft pushback tractors on airport tarmacs and aprons.

Small has identified the underlying data and industry standards that guide her opinions. Non-scientific, experience-based opinions and testimony is admissible when it is properly grounded, well-reasoned, and not speculative. *United States v. Masferrer*, 367 F. Supp. 2d 1365, 1373 (S.D. Fla. 2005). Accordingly, Small should be permitted to testify on whether Trepel acted in compliance with industry standards. *See, e.g. Pleasant Valley Biofuels, LLC v. Sanchez-Medina*, No. 13-23046-CIV, 2014 WL 11881018, at *2 (S.D. Fla. July 11, 2014) (explaining that "an expert may opine as to industry standards and whether a party has complied with those standards[.]").

The Undersigned also finds unconvincing the argument that Small's expert opinions will not *assist* the jury. Operating a 50-ton aircraft tractor is not akin to driving a car, the type of activity that a lay juror is likely familiar with and that might not be appropriate for expert testimony.

Defendant also seeks to strike Small's testimony as cumulative because Maltez is an American trainer and knows about the manner in which American conducts

---

[1] Trepel notes that Small did not cite to any specific publication, rule, or guideline to support her opinions. That scenario is certainly fodder for cross-examination at trial.

training. This argument is not convincing for several reasons. First, Maltez's knowledge, experience, and understanding of how training works is based on his experience at American only -- he is likely unqualified to opine on **industry** standards, regulatory requirements, or the like. Second, Maltez is the plaintiff in this case -- not an expert witness. Third, determining whether any witness would be providing cumulative testimony is a decision best left to the trial judge during the actual trial.

Nevertheless, the Undersigned *does* agree with Trepel's argument that Small should **not** be permitted to provide expert opinion testimony on how the contract should be interpreted and what contractual duties Trepel was obligated to provide. There are many reasons why Small should not be allowed to provide that type of testimony. Small's initial or "interim" report mentions contract interpretation conclusions. So does her final, "updated" report. On page two of this final report, for example, Small says that "[t]he contract entered into by American and Trepel commits the manufacturer to providing a 'qualified' trainer." [ECF No. 44-9, p. 2]. She then opines that "Trepel failed to do so [i.e., failed to comply with the purported contractual requirement] by presenting [] Kraemer as the corporate Train the Trainer qualified employee." *Id.*

Small is not an attorney, let alone an attorney specializing in contracts. Additionally, contract interpretation is an issue of law and cannot be the subject of expert testimony. *See generally Montgomery v. Aetna Cas. & Surety Co.*, 898 F.2d 1537,

1540–41 (11th Cir. 1990) (stating that "the construction of [a contract] is a question of law for the court," and holding that expert testimony regarding a party's duties under a contract "was a legal conclusion, and therefore should not have been admitted.").[2] As such, even if expert opinion testimony on contract interpretation might theoretically be permissible in this case, Small is not the one to provide it. She lacks the training, background and experience.

IV. CONCLUSION

For the reasons set forth above, and based on the considerable discretion afforded trial courts when ruling on the admissibility of expert testimony, the Undersigned **denies in large part** Trepel's *Daubert* motion but **grants it in small part** (concerning contract interpretation issues).

**DONE and ORDERED** in Chambers, in Miami, Florida, November 30, 2017.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Jose E. Martinez
All Counsel of Record

---

[2] Trepel has also filed a separate motion in limine to exclude any testimony, evidence, or reference to contract interpretation or breach of contract at trial. [ECF No. 53]. The Undersigned will address that motion in a separate order.